IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| MICHAEL DEAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 21-cv-3025 |
| ) | |
| ILLINOIS DEPARTMENT OF ) | |
| CORRECTIONS, DEE DEE ) | |
| BROOKHART, KELLY ) | |
| RICHARDSON, ROB JEFFREYS, ) | |
| and JOHN BALDWIN, ) | |
| ) | |
| Defendants. ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

This cause is before the Court on the partial Motion to Dismiss (d/e 10) filed by Defendants Rob Jeffreys, Dee Dee Brookhart, John Baldwin, and Kelly Richardson.  For the reasons stated below, Defendants' Motion is GRANTED.  Count II of the Complaint is DISMISSED WITHOUT PREJUDICE as to Defendants Baldwin and Jeffreys.  Additionally, Counts IV and V of Plaintiff's Complaint (d/e 1) are DISMISSED WITHOUT PREJUDICE in their entirety for failure to state a claim.

# I. BACKGROUND

The following facts are drawn from the well-pleaded allegations in Plaintiff's Complaint, which are accepted as true at the motion to dismiss stage.

Plaintiff was employed by the Illinois Department of Corrections ("IDOC") as a Correctional Officer at the Lawrence Correctional Center ("Lawrence") in Illinois beginning on June 4, 2012.  On December 12, 2018, Plaintiff was injured at work when an inmate bit off part of Plaintiff's thumb.  Following the injury, Plaintiff took a period of time off from work.  During this period, on December 18, 2018, Plaintiff was arrested and charged with misdemeanor domestic battery.  Plaintiff denied any allegations that he had committed any type of domestic battery.  On January 7, 2019, Plaintiff was again arrested, this time for possession of marijuana and marijuana paraphernalia in Knox County, Indiana.

Following these two arrests, Plaintiff was suspended without pay on February 2, 2019, at the request of Defendant John Baldwin.  At the time, Baldwin was employed as the Director of

IDOC. The sole stated reason for Plaintiff's suspension was that he had been arrested and charged with domestic battery.

On February 26, 2019, the domestic battery charge against Plaintiff was dismissed via a nolle prosequi. Plaintiff notified IDOC of the dismissal and requested that he be reinstated, but IDOC, through Baldwin and Defendants Brookhart and Richardson, refused to reinstate Plaintiff or to consider his request for reinstatement. Brookhart, at the time, was employed by IDOC as the acting warden of Lawrence. Richardson was employed by IDOC as an "Administrative Assistant II" at Lawrence.

On April 25, 2019, Plaintiff entered into a pre-trial diversion agreement with Knox County, Indiana. The agreement provided that Plaintiff would not be prosecuted in connection with his Indiana marijuana arrest. Plaintiff notified IDOC of the diversion agreement and once again requested that he be reinstated. IDOC continued to refuse to reinstate Plaintiff.

On May 13, 2019, Richardson, at the request of Brookhart, "identified charges" against Plaintiff and requested a pre-deprivation hearing. D/e 1, ¶ 40. Prior to the hearing, Brookhart "directed that

the decision to terminate [Plaintiff] had already been made" and directed that Plaintiff's employment be terminated following the hearing. Id., ¶ 42. The hearing was held on May 24, 2019. On June 21, 2019, Plaintiff was placed on suspension without pay pending discharge. On either July 17 or July 21, 2019,[1] Plaintiff's employment with IDOC was terminated.

Plaintiff filed a five-count Complaint in this matter on January 18, 2021. Count I alleges that the IDOC interfered with Plaintiff's rights under the Family Medical Leave Act ("FMLA") following Plaintiff's December 2018 thumb injury by failing to provide Plaintiff with the documents he was entitled to receive, failing to reinstate Plaintiff after he recovered, and retaliating against Defendant for exercising his rights under the FMLA. Count II alleges that Baldwin, Brookhart, Richardson, and Jeffreys violated Plaintiff's Fourteenth Amendment right to due process of law by providing inadequate procedures before and after suspending Plaintiff without pay on February 2, 2019. Count III alleges that Richardson and

---

[1] The Complaint gives two inconsistent dates for Plaintiff's termination, stating at one point that Plaintiff was terminated on July 17, 2019, and elsewhere that Plaintiff was terminated on July 21, 2019. See d/e 1, ¶¶ 18, 44.

Brookhart deprived Plaintiff of his right to procedural due process prior to Plaintiff's termination because the decision to fire Plaintiff was made prior to the "sham" hearing held on May 24, 2019. Count IV alleges that Brookhart, Richardson, and Jeffreys violated Plaintiff's Fourteenth Amendment right to equal protection when they terminated him because of his membership in a distinctive class of individuals, namely individuals who have been arrested. In Count V, Plaintiff alleges that Brookhart and Richardson violated Plaintiff's equal protection rights by firing him because he is male.

Each of Counts I through V requests both equitable relief and monetary damages. Count I is brought under the FMLA, while Counts II through V are all brought pursuant to 42 U.S.C. § 1983.

On August 4, 2021, Defendants Brookhart, Richardson, Jeffreys, and Baldwin filed the instant partial Motion to Dismiss (d/e 10). Defendants' Motion requests that the Court: (1) dismiss the claims against Baldwin and Jeffreys in their individual capacities for failure to state a claim; (2) dismiss Counts IV and V in their entirety for failure to state plausible equal protection claims;

and (3) dismiss Counts IV and V in their entirety because the individual Defendants named are entitled to qualified immunity.[2]

On August 25, 2021, Plaintiff filed a Response (d/e 14) to Defendants' Motion to Dismiss.  Plaintiff claims that the individual capacity claims against Baldwin and Jeffreys contain sufficiently detailed allegations and that Counts IV and V adequately allege equal protection claims.

## II. LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint.  Christensen v. Cty. of Boone, Ill., 483 F.3d 454, 458 (7th Cir. 2007).  To state a claim for relief, a plaintiff need only provide a short and plain statement of the claim showing he is entitled to relief and giving the Plaintiff fair notice of the claims. Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008).

When considering a motion to dismiss under Rule 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepting all well-pleaded allegations as true and construing all reasonable inferences in plaintiff's favor.  Id.

---

[2] Because the Court dismisses Counts IV and V for failure to state a claim, the Court does not reach Defendants' qualified immunity argument in this Opinion.

However, the complaint must set forth facts that plausibly demonstrate a claim for relief. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007). A plausible claim is one that alleges factual content from which the Court can reasonably infer that the Plaintiff is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Merely reciting the elements of a cause of action or supporting claims with conclusory statements is insufficient to state a cause of action. Id.

### III. ANALYSIS

A.  **Plaintiff Has Not Adequately Alleged Claims Against Defendants Baldwin and Jeffreys in Their Individual Capacities.**

An individual cannot be held liable in a § 1983 action "unless he caused or participated in an alleged constitutional deprivation." Wolf-Lillie v. Sonquist, 699 F.2d 864, 869 (7th Cir. 1983) (internal citations and quotation marks omitted). "Without a showing of direct responsibility for the improper action, liability will not lie against a supervisory official. A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary." Id. For supervisory employees, an

official satisfies the personal responsibility requirement of § 1983 "if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent." Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir.1995).  Here, Defendants Jeffreys and Baldwin have moved to dismiss the claims that Plaintiff has brought against them in their individual capacities.  Baldwin was the Director of IDOC prior to May 2019, at which point Jeffreys took over as Director.  Plaintiff names both Jeffreys and Baldwin in Count II of his Complaint, which alleges Due Process Clause violations relating to IDOC's February 2019 suspension of Plaintiff without pay.  Plaintiff additionally names Jeffreys, but not Baldwin, as a Defendant in Count IV of the Complaint, which alleges that IDOC's July 2019 termination of Plaintiff's employment violated the Equal Protection Clause.

With respect to Jeffreys, the Complaint states only that he assumed the position of Director of IDOC beginning in May 2019. There is no allegation in the Complaint that Jeffreys was personally involved in the alleged pre- and post-suspension deprivations of due process alleged in Count II.  Plaintiff argues in his Response that

his due process rights were "still being violated" in May 2019, when Jeffreys became the Director of IDOC.  However, the Complaint does not specifically allege that the ongoing due process violations occurred at Jeffreys's direction or with Jeffreys's knowledge and consent.  In the absence of specific allegations that Jeffreys was personally involved in the alleged deprivations, Plaintiff's due process claims against Jeffreys must be dismissed.

With respect to Defendant Baldwin, Plaintiff alleges that "[IDOC], through Baldwin, Brookhart, and Richardson, refused to reinstate Dean and refused to consider his request that he be reinstated."  D/e 1, ¶ 36.  This statement does not amount to an allegation that Baldwin was personally involved in the decision to deprive Plaintiff of his post-deprivation due process rights.  Plaintiff also alleges that he was initially suspended "at the request of Baldwin," id., ¶ 32, but this allegation relates to events that took place before Plaintiff's suspension without pay on February 2, 2019.  Count II is based solely on the alleged "failure to provide Dean with post-deprivation process."  D/e 1, ¶ 59.  Plaintiff has not claimed that any due process violations occurred before his suspension

without pay and has not alleged with any specificity that Baldwin was personally involved in or aware of the due process violations that occurred after he was suspended.  In order to state a claim against Baldwin in his individual capacity, Plaintiff would have to provide some level of detail regarding how Baldwin was involved in the alleged post-suspension denial of due process rights.  Accordingly, Plaintiff's due process claims against Baldwin must be dismissed.

Defendants have also moved to dismiss Plaintiff's equal protection claim against Jeffreys.  Count IV of the Complaint alleges violations of the Equal Protection Clause arising out of IDOC's eventual termination of Plaintiff's employment.   The Complaint alleges that "Dean's employment with [IDOC] was terminated by Brookhart, Richardson, and Jeffreys because he was in a suspect class of individuals."  Id., ¶ 76.  These allegations, like the allegations regarding Baldwin's involvement in the alleged due process violations, are not specific or detailed enough to plausibly state a claim.  Plaintiff states that IDOC fired Plaintiff "through" three of its employees, including Jeffreys, but does not specifically

allege that Jeffreys was directly or personally involved with Plaintiff's firing.  Accordingly, Plaintiff's equal protection claim against Jeffreys must be dismissed.

**B.      Plaintiff Has Not Provided Sufficient Detail to State a Sex Discrimination Equal Protection Claim.**

Defendants have also moved to dismiss Count V of the Complaint in its entirety for failure to state a claim.  In Count V, Plaintiff alleges that his rights under the Equal Protection Clause were violated when he was terminated from his employment with IDOC.  Plaintiff, who is male, alleges that his termination was the product of sex-based discrimination.

In <u>McCauley v. City of Chicago</u>, 671 F.3d 611 (7th Cir. 2011), the Court of Appeals for the Seventh Circuit discussed the level of detail required to state an equal protection claim.  The court held that, in analyzing the sufficiency of a complaint under the <u>Twombly</u>/<u>Iqbal</u> plausibility standard, well-pleaded facts in a complaint are accepted as true, but that "legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth."  671 F.3d at 616.  The court also held that <u>Twombly</u> and <u>Iqbal</u> "require the plaintiff to

'provid[e] some specific facts' to support the legal claims asserted in the complaint" and that, while the "degree of specificity required is not easily quantified," a plaintiff must provide "enough details about the subject-matter of the case to present a story that holds together." Id.  The Court then found that "once the legal conclusions are disregarded, just one paragraph of factual allegations remains" in the plaintiff's complaint and found that this one paragraph did not provide sufficient detail to state a facially plausible equal protection claim.  Id. at 618.

McCauley involved a relatively complicated claim, and the level of factual specificity required of a plaintiff "rises with the complexity of the claim." Id. at 617–618.  But even relatively simple employment discrimination claims like Plaintiff's require more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 556 U.S. at 678.  In Sokn v. Fieldcrest Community Unit School Dist. No. 8, No. 10-CV-1122, 2011 WL 2533793 (C.D. Ill. June 27, 2011), for example, the court dismissed a relatively simple equal protection claim filed by a female principal who alleged that the school district that had

employed her discriminated against her by paying her less than her male counterparts. Id. at *3. The court found that the plaintiff failed to plead sufficient details to allow the reasonable inference that her lower pay was solely the result of her being a woman, where the plaintiff "only provided the salaries of all the other principals in the District." Id. at *5.

Here, Count V of Plaintiff's Complaint does not clear the low bar that confronts every plaintiff alleging a simple employment discrimination claim. Plaintiff's story does not hold together because he provides only the bare allegation that he was fired for being male, without any additional details that could allow the Court to reasonably infer that he was fired for being male. Plaintiff does not allege that a comparable female colleague was treated better than he was, or that any IDOC employee made any specific comment or took any specific action that could be construed as sex discrimination. Accordingly, Count V must be dismissed for failure to state a claim.

### C.     Count IV Does Not Survive Rational Basis Review.

Like Count V, Count IV of Plaintiff's Complaint asserts an equal protection claim arising out of the termination of Plaintiff's employment at IDOC. In Count IV, Plaintiff asserts that he was terminated because he belongs to a "clearly identifiable class" consisting of "individuals who have been subjected to arrest." D/e 1, ¶ 74. At the pleading stage, the fact that Count IV and Count V present potentially inconsistent theories does not create a problem because a plaintiff can plead different theories in the alternative. See Fed. R. Civ. P. 8(d)(2) (permitting a party to "set out 2 or more statements of a claim . . . alternatively or hypothetically, either in a single count or defense or in separate ones"); see also Douglas v. Alfasigma USA, Inc., No. 19-CV-2272, 2021 WL 2473790, at *14 (N.D. Ill. June 17, 2021) ("[A] plaintiff can allege that the defendant took a particular action solely because of race, or the defendant took a particular action solely because of sex. Or maybe both.").

The Complaint provides a relative wealth of detail regarding the connection between Plaintiff's arrests and Plaintiff's

termination.  The Complaint also alleges that Plaintiff's arrests were the stated reason for Plaintiff's termination.  D/e 1, ¶ 45.  Defendants, therefore, do not argue that Count IV is unsupported by sufficiently detailed allegations.  Rather, Defendants assert that Plaintiff is categorically barred from asserting an equal protection claim based on discrimination against individuals who have been arrested because "being arrested is not a suspect class recognized as receiving protection from the Equal Protection Clause."  D/e 11, p. 6.

    Defendants are correct that persons who have been arrested are not a "suspect class."  See Vukadinovich v. Bd. of Sch. Trustees of Michigan City Area Sch., 978 F.2d 403, 414 (7th Cir. 1992) (distinguishing arrest history from "forbidden characteristic[s]" like "race, religion, or gender" and affirming summary judgment for defendants where plaintiff argued that he was treated differently because he was an alcoholic and had been arrested).  However, discrimination on the basis of non-suspect classifications can still violate the Equal Protection Clause, which "protect[s] individuals

against purely arbitrary government classifications." Geinosky v. City of Chicago, 675 F.3d 743, 747 (7th Cir. 2012).

Since Plaintiff does not allege a suspect classification in Count IV and does not allege that he has been deprived of a fundamental constitutional right like freedom of speech or freedom of religion, Plaintiff's claim is subject to rational basis review.  See Srail v. Vill. of Lisle, Ill., 588 F.3d 940, 943 (7th Cir. 2009).  To prevail on an equal protection claim subject to rational basis review, a plaintiff must show that: "(1) the defendant intentionally treated him differently from others similarly situated, (2) the defendant intentionally treated him differently because of his membership in the class to which he belonged, and (3) the difference in treatment was not rationally related to a legitimate state interest."  Smith v. City of Chicago, 457 F.3d 643, 651 (7th Cir. 2006).  Here, Plaintiff alleges that IDOC's sole stated reason for terminating him was that he had been arrested twice, see d/e 1, ¶ 45, so the first and second elements are satisfied.  The determinative question, therefore, is whether Plaintiff's termination was rationally related to a legitimate state interest.

When applying rational basis review, courts presume the rationality of the challenged government action. Flying J Inc. v. City of New Haven, 549 F.3d 538, 545 (7th Cir. 2008). Overcoming this presumption requires a plaintiff to "negative any reasonably conceivable state of facts that could provide a rational basis for the classification." Board of Trustees v. Garrett, 531 U.S. 356, 367 (2001). There is some tension between this substantive standard and the standard imposed by Rule 12(b)(6) of the Federal Rules of Civil Procedure, which allows a plaintiff to prevail if "relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)). In Wroblewski v. City of Washburn, 965 F.2d 452 (7th Cir. 1992), the Seventh Circuit resolved this tension by articulating a combined standard for analyzing rational basis equal protection claims in the Rule 12(b)(6) context. Id. at 460. A court must first "take as true all of the complaint's allegations and reasonable inferences that follow," and then "apply the resulting 'facts' in light of the deferential rational basis standard." Id. In other words, the Wroblewski standard requires a plaintiff to allege facts which, taken

as true, are "sufficient to overcome the presumption of rationality" to which the government is entitled.  Id.  This requires allegations so damning that "no sound reason for [the government's] action can be hypothesized," such that the action is "wholly impossible to relate to legitimate government objectives."  Lauth v. McCollum, 424 F.3d 631, 634 (7th Cir. 2005) (quoting Lamers Dairy Inc. v. U.S. Dep't of Agr., 379 F.3d 466, 473 (7th Cir. 2004), and Esmail v. Macrane, 53 F.3d 176, 180 (7th Cir. 1995)).

    Here, it is entirely possible to imagine rational and sound reasons for Illinois to fire a correctional officer who had been arrested twice in as many months.  Correctional officers in Illinois are charged with maintaining order and ensuring the safety of inmates in the state's prisons.  It would not be irrational for IDOC to conclude that these weighty responsibilities can best be undertaken by law-abiding individuals.  Nor would it be entirely irrational for IDOC to assume that individuals who have been arrested twice for two different offenses in a short period of time are likely to be less law-abiding, on average, than individuals who have not been arrested.  IDOC's decision to terminate Plaintiff because of

his arrests on domestic battery and marijuana charges, therefore, could easily bear a rational relationship to a legitimate government objective.  Accordingly, Count IV of Plaintiff's Complaint must be dismissed.

## IV. CONCLUSION

For the reasons stated above, Defendants' partial Motion to Dismiss (d/e 10) is GRANTED.  Count II of Plaintiff's Complaint is DISMISSED WITHOUT PREJUDICE as to Defendants Baldwin and Jeffreys.  Counts IV and V of Plaintiff's Complaint are DISMISSED WITHOUT PREJUDICE in their entirety.  Additionally, Plaintiff may file an amended complaint on or before April 4, 2022.  Defendant shall file an answer to the original complaint or an answer or other response to any amended complaint on or before April 18, 2022.

**ENTERED:  March 18, 2022**

**FOR THE COURT:**

*/s/ Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**